DAVID E. MCFADDEN, APPELLEE, v. CEDAR COUNTY, APPELLANT.

FILED FEBRUARY 13, 1914. No. 17,591.

1. **Appeal: ISSUES: REVIEW.** If a case is fully tried by the parties in the district court as though the answer contained only a general denial, and without objection to the manner of trial by either party, it will be so considered upon appeal in this court, and admissions in the answer will not be regarded.

2. **Officers: SHERIFFS: DEPUTY: DE FACTO OFFICER.** If the sheriff designates a person to occupy the residence furnished for the jailer by the county, and gives such person the care of the jail and of the prisoners therein, and authorizes him to receive persons upon mittimus from the courts and confine them in the jail,

and to perform other such duties as can only be performed by authority of the sheriff, the person so appointed should qualify as deputy; but in the performance of such duties he is a *de facto* officer, although he fails to take the oath of office.

3. ――――: ――――: COMPENSATION OF JAILER. When the sheriff does not perform the duties of jailer in person, but appoints another, who performs the duties of that office and who gets all of his compensation from the county, the sheriff is not entitled to fees as jailer.

APPEAL from the district court for Cedar county: GUY T. GRAVES, JUDGE. *Reversed and dismissed.*

*P. F. O'Gara* and *F. P. Voter,* for appellant.

*H. E. Burkett, contra.*

SEDGWICK, J.

The plaintiff, who is sheriff of Cedar county, filed a claim with the county board of that county for an allowance of compensation as jailer. Upon the appeal to the district court, and trial to the court without a jury, his claim was allowed in full, and the county has appealed.

Section 13, ch. 46, Comp. St. 1911, provides: "The jailer or keeper of the jail shall, unless the sheriff elect to act as jailer in person, be a deputy appointed by the sheriff, and such jailer shall take the necessary oath before entering upon the duties of his office; provided, the sheriff shall in all cases be liable for the negligence and misconduct of the jailer, as of other deputies." Section 5, ch. 28, Comp. St. 1911, provides: "Where there are prisoners confined in the county jail, one dollar and fifty cents per day shall be allowed the sheriff as jailer." The same section requires the sheriff to report the amount of his fees and "pay all fees earned to the county treasurer." In *Dunkel v. Hall County,* 89 Neb. 585, it was held that, when the sheriff acts as jailer in person, he is entitled to compensation as jailer in addition to his salary as sheriff.

The petition in this case alleged that the sheriff had no deputy and "acted and was the jailer in and for said county." The answer admitted this allegation, and de-

nied "that there is due the plaintiff from the defendant the sum of $541, or any other sum whatever." The plaintiff now insists that the answer states no defense, and that he is entitled to judgment upon the pleadings. The attorney for the defendant contends that the allegation that there is nothing due the plaintiff from the defendant is sufficient to put the plaintiff upon his proof. It might be said that under the decision in *Dunkel v. Hall County, supra,* the admission that the plaintiff had no deputy and acted and was the jailer for the county would be an admission that the plaintiff was entitled to recover in the case, and the subsequent denial that he was entitled to recover would amount to a conclusion not justified under the law. It is, however, unnecessary to consider these nice questions of practice in this case, since these questions were not presented nor suggested to the court below, but the case was tried by both parties upon the merits as though the allegations in the petition were all denied. Under these circumstances, it is the settled rule of this court to determine the case here as it was tried in the court below, and the only question for us to determine is whether under this evidence the judgment of the lower court can be sustained. The sheriff testified in his own behalf, and from his evidence it appears that the county had provided a jail building with the jail proper on the lower floor, and living-rooms for the jailer on the second floor, and that he has never occupied the living-rooms in the jail building, and that the men whom he has appointed from time to time have occupied those rooms with their families; that these men took care of the prisoners and fed them, and did the general work about the jail, and had charge of the jail during his absence from the county, and that he had on several occasions been absent for some little time. He testified that he went up to the jail "three or four times a week," and that the county furnished fuel for the living-rooms of the jail building. When he was asked what he meant by "appointing" these men, he said: "Well, I just got them to live in the jail;" and he also testified that he allowed them to live in the jail

in consideration of their assisting him. John Fleming tes-
tified that he was living in the county jail building with
his family, and had done so for some time, and had charge
of it continuously during the time he had lived there;
that the sheriff appointed him, and that his duties were
to feed the prisoners, to look after them and take care
of them, and to look after the sanitary condition of the
cells, and their clothing; that he paid no rent or light
bills, and that the county furnished him with coal and
water; that he boarded the prisoners and received the pay
for boarding them. When he was asked upon cross-exam-
ination what he meant by the sheriff appointing him, he
said that the sheriff "told me I could go up there and live
and take care of it." He testified that he had a garden on
the grounds on which the jail stands, and that all he did
around the jail was done under the direction of the sheriff.
He also testified that in the absence of the sheriff, he had
general charge of the jail and prisoners, and that when the
sheriff was away no one else took care of them but himself;
that when prisoners were brought there he received them
and put them in the jail; that he brought prisoners down
to the court for hearing; and that the mittimus would be
delivered to him, and he would take them back to jail.
There was other evidence of this kind which it is not nec-
essary to recite here.

The statute requires that when the sheriff appoints a
jailer he shall make him his deputy, and that as such dep-
uty he shall take an oath of office. The sheriff did not
make these men his deputies, and they did not take any
oath of office. They were, however, appointed by the sher-
iff. They performed duties, and in controlling the pris-
oners and committing them they exercised authority that
is inherent in the office of sheriff, and could not be exer-
cised by any one without the authority of the sheriff. It
is, of course, true that in designating an individual for
such important duties the sheriff should have legally ap-
pointed him as deputy, and such deputy should have taken
the oath of office; but in assuming and performing the du-

95 Neb. 21

ties of jailer under the authority of the sheriff he became a *de facto* officer, and he has been compensated for his services as such by the county in furnishing him a residence without rent, and other similar advantages. The sheriff in this case has not performed the duties of jailer in person as contemplated by the statute. He has appointed others to perform those duties, and has given them authority necessary for the performance thereof. He has paid them nothing for their services. Their compensation has come from the county, and he cannot require the county to compensate him also for those services by the mere. neglect to qualify them as the law provides.

The judgment of the district court is reversed and the case dismissed.

REVERSED AND DISMISSED.

LETTON, FAWCETT and HAMER, JJ., not sitting.